99   595
100   524
99   595
103    16
103   485
99   595
f106   175

# Wytheville.

## STEINMAN v. VICARS.

### JULY 4, 1901.

1. CHANCERY JURISDICTION—*Cloud on Title—Title and Possession—Possession of Underlying Minerals.*—To maintain a suit to remove a cloud upon the title to land the complainant must hold the legal title to the land and be in possession thereof, but the actual possession of the surface of land underlain by undeveloped minerals is a sufficient possession to enable the owner of the surface to invoke the jurisdiction of a court of equity to remove a cloud created by a deed, subordinate to that of the owner, conveying the underlying minerals.

2. EJECTMENT—*Possession of Plaintiff—Code, Sec. 2726 as Amended—Effect of Amending.*—Neither before nor since the amendment of section 2726 of the Code (Acts 1895-'6, p. 514) could a plaintiff in possession of land maintain an action of ejectment therefor. The object of the action of ejectment is to try the possessory title to corporeal hereditaments, and to recover the possession thereof. The effect of the amendment was simply to permit a plaintiff, in cases where the premises are occupied, in his discretion, to join as defendants with the occupant any person claiming title thereto, or an interest therein adversely to the plaintiff.

3. CHANCERY JURISDICTION—*Remedy at Law Subsequently Given.*—Where courts of equity have once acquired jurisdiction of a subject matter because there was no remedy at law, or because of the inadequacy of the legal remedy, they do not lose such jurisdiction merely because courts of law have been subsequently authorized to administer the same or similar relief.

4. LAND—*What it Embraces.*—Where land is sold, without reservation of any kind, it embraces the underlying minerals.

Appeal from a decree of the Circuit Court of Wise county, pronounced September 15, 1900, in a suit in chancery, wherein

the appellee was the complainant, and the appellant was the defendant.

*Affirmed.*

The opinion states the case.

*George A. Smith* and *R. T. Irvine,* for the appellant.

*Fulton & McDowell,* for the appellee.

WHITTLE, J., delivered the opinion of the court.

The appeal in this cause is from a decree of the Circuit Court of Wise county in a suit in equity instituted by the appellee, Vicars, against the appellant, Steinman, to remove a cloud cast upon Vicars' title to one hundred and fifty-eight acres of land by a deed from Skeen conveying to Steinman the coal and minerals underlying the land.

The record discloses the following facts: In the year 1874, Dale Carter contracted to sell three hundred and fifty-six acres of land, situated in Wise county, Virginia, to Skeen, at the price of $1.00 per acre, and executed a title bond therefor.

Skeen having failed to pay the purchase price, and Dale Carter having died in the year 1882, his administrators filed a bill in the Circuit Court of that county against the heirs at law and widow of Dale Carter, Skeen, and sub-purchasers from him, including Steinman, praying for a specific performance of the contract of sale. Accordingly, the court decreed a sale of the whole land to satisfy the unpaid purchase money; and the one hundred and fifty-eight acre tract, the subject of this litigation, was purchased by Counts.

At this stage of the proceedings, Steinman filed a petition in the cause, in which he set forth his purchase of the coal and minerals from Skeen, the sale of the land to satisfy the vendor's lien due to Carter's estate, and prayed that the sale be set aside, that the land be first offered for sale with the coal and minerals

reserved, and that the coal and minerals be not sold unless a sale of the surface failed to produce a sufficient amount to discharge the lien. Subsequently to the filing of this petition, upon which no direct action was taken, Counts paid the purchase money, and the one hundred and fifty-eight acres were conveyed to him under decree of the court, and a final decree was pronounced in the cause, from which no appeal was taken.

The land was afterwards sold at the suit of lien creditors of Counts, and purchased by E. C. Greear and J. L. Greear, who sold and conveyed the same to Vicars. It appears that Counts, the Greears, and Vicars, took actual possession of the land under their respective purchases, which possession has been continuous and uninterrupted to the present time.

In his answer to Vicars' bill, Steinman set up his purchase and conveyance of the coal and minerals from Skeen, that he had been regularly assessed with and had paid taxes thereon from the date of his purchase hitherto. He avers that Vicars never had possession of the coal and minerals, that they were not sold in the suit of Carter's administrator against Skeen and others, and that the deed to Counts passed no title in them to him.

The cause was finally heard at the September term, 1900, the relief prayed for was granted, and from that decree this appeal was taken.

The first error assigned is that the trial court erred in not dismissing plaintiff's bill, being without jurisdiction in the premises. The theory upon which this contention rests is that the matter in controversy was the coal and minerals underlying the land, and that complainant's actual possession of the surface gave constructive possession merely of the coal and minerals; that to be in a position to invoke the aid of a court of equity, in such case, the plaintiff must have the legal title and be in actual possession of the interest in land from which it is sought to remove the cloud. In other words, that he must have either mined the coal and minerals, or done some act of an equivalent nature.

The jurisdiction of courts of equity to entertain suits to quiet possession and remove clouds from a title to real estate is firmly established in this State.

But the right to invoke this equitable jurisdiction only accrues where the holder of the legal title to the land is in possession. Being in possession, he cannot maintain an action of ejectment; and, not having a full, adequate, and complete remedy at law, must resort to the equitable forum for relief. *Va. Coal & Iron Co.* v. *Kelly,* 93 Va. 332; *Kane* v. *Va. Coal & Iron Co.,* 97 Va. 329.

It was suggested that the purpose and effect of the amendment to section 2726 of the Code (Acts 1895-'6, p. 514), was to enlarge the scope of the action of ejectment, so as to enable a person in possession of land to maintain ejectment against one "claiming title thereto, or claiming any interest therein, adversely to the plaintiff."

Prior to the amendment, section 2726 of the Code read: " The person actually occupying the premises shall be named defendant in the declaration. If they be not occupied, the action must be against some person exercising acts of ownership therein or claiming title thereto, or some interest therein, at the commencement of the suit."

The amendment reads: " The person actually occupying the premises and any person claiming title thereto or claiming any interest therein adversely to the plaintiff, may also, at the discretion of the plaintiff, be named defendants in the declaration. If there be no person actually occupying the premises adversely to the plaintiff, then the action must be against some person exercising ownership thereon, or claiming title thereto, or some interest therein at the commencement of the suit."

Under the previous statute, where the premises were actually occupied, the action was confined to such occupant; and only in cases where the premises were vacant could the action be maintained against one merely claiming title thereto.

The effect of the amendment is, to permit a plaintiff, in cases where the premises are occupied, in his discretion, to join as defendants with the occupant any persons claiming title thereto, or claiming any interest therein adversely to the plaintiff.

The land being vacant, by the former statute and the amendment, the action lies against one merely claiming adversely to the plaintiff. The land being occupied, by the amendment, one merely claiming adversely to the plaintiff may be joined as a defendant along with the occupant.

There is nothing in the amendment to warrant the construction that it was intended to confer upon a plaintiff in possession a right to maintain ejectment.

Such a construction would be a perversion of the primal object of the action of ejectment, which is to try the possessory title to corporeal hereditaments, and to recover the *possession* thereof. But if the statute was susceptible of such a construction, it could not affect the jurisdiction of the equity courts; the maxim being that equity, having once had jurisdiction of a subject-matter because there was no remedy at law, or because the remedy at law was inadequate, *does not lose such jurisdiction,* merely from the fact that courts of law afterwards give the same or similar relief.

" The student must observe, however, in applying this criterion of equity jurisdiction, that in modern times the courts of law frequently afforded a remedy which at earlier periods they were accustomed to deny, and that sometimes the legislature has conferred on the law courts, in certain cases, the same remedial faculty which belongs to courts of equity. But in neither case, in general, does equity relinquish the cognizance which once it has gained; and therefore not in a few instances    *    *    *    * we find concurrent jurisdiction established between the two tribunals." 4 Min. Inst. (3d ed.), p. 1333; 1 Story's Eq. Jurisp., sec. 80.

In the case of *Kelly* v. *Lehigh M. & M. Co.,* 98 Va. 405, this

court said: " Where courts of equity have once acquired jurisdiction, a subsequent statute which gives to or enlarges the jurisdiction of the common-law courts over the same subject does not deprive the equity courts of their jurisdiction, although the statute may furnish a complete and adequate remedy at law, unless the statute conferring such jurisdiction uses restrictive or prohibitory words."

The mines in this cause had never been opened, and, therefore, there could be no actual possession of the coal and minerals, in the sense of physical contract. Actual possession of the surface of the land underlain by the undeveloped minerals was the only possession of which the subject was, in its then condition, capable, and it is a sufficient possession to enable the owner of the surface to invoke the jurisdiction of a court of equity. He could no more bring ejectment for the undeveloped, underlying minerals, than for the surface of which he was actually possessed.

The second assignment of error is that, in the case of Dale Carter's administrator against Skeen and others, the court only sold the surface of the one hundred and fifty-eight acres to Counts, and that the Greears and Vicars by their purchases took nothing more; and that the bill should, therefore, have been dismissed on the merits.

Dale Carter owned the land in *its entirety.* It was encumbered by a lien for the purchase money, which constituted a paramount charge on the whole.

The bill prayed for a sale of *the land.* The land was sold, the sale confirmed, the purchase money paid, and a conveyance ordered and made of the entire one hundred and fifty-eight acres, without restriction or reservation.

By the Virginia statute *land* is declared to include "lands, tenements and hereditaments and all rights thereto and interest therein other than a chattel interest therein." Code of Virginia, ch. 2, sec. 2, sub-section 10. See also *Id.,* sec. 2443.

As has been remarked, the *gravamen* of Steinman's petition

in that cause was that the land including the coal and minerals had been sold; and the prayer was that the sale be set aside and the property offered again for sale, with the coal and minerals reserved, and that the land with the coal and minerals be not sold in its entirety unless a sale of the surface should prove insufficient to discharge the vendor's lien. The court did not grant the relief prayed for, but confirmed the sale as already made, and through its commissioner passed the title to Counts.

It is apparent, without the allegations of the petition, that the whole subject was sold; but if the matter had been in doubt, this solemn admission of record by Steinman, that the coal and minerals had been sold, would have removed any uncertainty that might have found lodgment in the mind of an examiner of the title.

The decree appealed from is plainly right, and must be affirmed.

*Affirmed.*